IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:22-CV-146-RJ

| | |
|---|---|
| JUDY CAROL MELVIN, | |
|               Plaintiff/Claimant, | |
| v. | O R D E R |
| KILOLO KIJAKAZI,<br>Acting Commissioner of Social Security, | |
|               Defendant. | |

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-23, -24] pursuant to Fed. R. Civ. P. 12(c). Claimant Judy Carol Melvin ("Claimant"), proceeding *pro se*, filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of her application for a period of disability and Disability Insurance Benefits ("DIB"). Claimant filed a response and corrected response in opposition to the Defendant's motion, [DE-26, -27], the time for further responsive briefing has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, Claimant's Motion for Judgment on the Pleadings is denied, Defendant's Motion for Judgment on the Pleadings is allowed, and the agency decision is affirmed.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on September 6, 2019, alleging disability beginning December 30, 2017. (R. 67, 362–68). The claim was denied initially and upon reconsideration. (R. 184–213). A hearing before an Administrative Law Judge ("ALJ") was held on May 6, 2021, at which Claimant, represented by a non-attorney, appeared

and testified. (R. 148–83). A supplemental hearing was held on July 9, 2021, at which Claimant and a vocational expert ("VE") testified. (R. 89–147). On September 29, 2021, the ALJ issued a decision denying Claimant's request for benefits. (R. 64–88). On February 9, 2022, the Appeals Council denied Claimant's request for review. (R. 1–7). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d

438, 439–40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

In this case, Claimant alleges the ALJ erred by finding her severe mental and physical impairments did not prevent her from performing a reduced range of medium exertion work. Pl.'s Mem. [DE-23] at 1–3; Pl.'s Resp. [DE-27] at 1–3.

3

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had engaged in substantial gainful activity ("SGA") since the alleged onset date but proceeded with the sequential evaluation process because there was a period of time when Claimant was not engaged in SGA. (R. 69–70). Next, the ALJ determined Claimant had the severe impairments of joint dysfunction of the left shoulder, anxiety, depression, post-traumatic stress disorder, and bereavement, as well as the non-severe impairments of mild obesity, hyperlipidemia, hypertension, gastroesophageal reflux disease, vocal cord cyst, vitamin D and B12 deficiency, chronic kidney disease, impaired fasting glucose, plantar fasciitis, anemia, trochanteric bursitis, hypokalemia, upper respiratory infection, cellulitis, urinary tract infection, viral syndrome, hemorrhoids, and asymptomatic menopausal state. (R. 70–71). The ALJ also concluded that Claimant's neck pain, back pain, generalized osteoarthritis, chest pain with a negative cardiac workup, fibromyalgia, sleep-wake disorder, and inflammatory bowel disease were not medically determinable impairments. (R. 71). At step three, the ALJ concluded Claimant's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 71–73). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments had resulted in a moderate limitation in adapting or managing oneself; understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace. (R. 72–73).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform medium work[1] with the following additional limitations:

---

[1] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing

4

the claimant can stand and/or walk up to six hours, and sit up to six hours total, in an eight-hour workday. She can lift and carry up to 50 pounds occasionally and up to 25 pounds frequently, and she can push and pull in accordance with those lifting and carrying limitations. The claimant can frequently reach overhead with the dominant upper extremity. Further, she can understand, remember, and carry out simple instructions, which is defined to mean activity that is consistent with a reasoning level of "one" or "two" as defined in the Dictionary of Occupational Titles (DOT). She can sustain concentration, attention, and pace sufficient enough to carry out those simple instructions over the course of an eight-hour workday and at two-hour intervals. The claimant can work in occupations that require only occasion[al] contact with coworkers, supervisors, and the general public, and she can work in a low-stress setting, which is specifically defined to mean no fast-paced production, only simple work-related decisions, and few or no changes in the work setting.

(R. 73–82). In making this assessment, the ALJ found Claimant's statements about her symptoms and limitations to be not entirely consistent with the medical and other evidence in the record. (R. 75). At step four, the ALJ concluded Claimant was unable to perform the requirements of her past relevant work as a certified nursing assistant. (R. 82). Nonetheless, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that Claimant can perform. (R. 82–84).

## V. DISCUSSION

Claimant suffers from a combination of mental and physical impairments and contends she has been unable to work since the untimely death of her daughter in December 2017, which caused her to decompensate from the stress, shock, and trauma. Pl.'s Mem. [DE-23] at 1–3. Defendant contends substantial evidence supports the ALJ's finding that Claimant has the RFC to perform a reduced range of medium work. Def.'s Mem. [DE-24] at 7–18.

### A. Claimant's Work History

Claimant argues that she was out of work for a year while her disability application was

---

up to 25 pounds. If someone can do medium work, they can also do sedentary and light work. 20 C.F.R. § 404.1567(c).

5

pending due to a mental breakdown, she subsequently had a failed work attempt, she returned to work due to financial hardship, e.g., eviction, car repossession, insurance failure, and inability to pay utilities, but continued to experience decompensation due to episodes of stress, and she was ultimately terminated due to absences as a result of her ongoing impairments. Pl.'s Mot. [DE-23] at 1–3.

At step one, the ALJ found that Claimant had engaged in SGA since the alleged onset date. (R. 69). First, the ALJ considered that Claimant worked on a part time basis from December 30, 2017 through March 4, 2019, but that the earnings were below SGA level. *Id.* Next, the ALJ noted that Claimant returned to full time work as a certified nursing assistant ("CNA") at a mental hospital from March 4, 2019 through August 26, 2019, but stated that this work ended due to her impairments. (R. 69, 396–97, 407–15). The ALJ concluded that this was an unsuccessful work attempt. (R. 69, 521–24). Finally, the ALJ determined that Claimant had earnings well over SGA levels during all four quarters of 2020 and in the first quarter of 2021, the evidence submitted from Claimant's employer did not support a finding that this period of employment was marked by excessive absences or tardiness, and she continued to work at that level at the time of the administrative hearing. (R. 69–70, 106, 396–97, 506–09). Despite this finding, the ALJ proceeded with the sequential evaluation process because there was a period of time when Claimant was not engaged in SGA. (R. 69–70). Accordingly, Claimant was not prejudiced at step one by the ALJ's finding that she engaged in SGA level work after her alleged onset date.

The ALJ also considered Claimant's work history in the RFC determination. For example, in evaluating the effects of Claimant's shoulder, neck, and back pain on her ability to work, the ALJ found that her complaints predated her alleged onset date by several years but did not prevent her from working during that time, and more recent records documented that Claimant had

6

returned to work but did not report any difficulties working to her treatment provider. (R. 75, 528–31, 540–43, 609–22). Similarly, the ALJ noted that Claimant's treatment for her mental impairments with her primary care provider predated her alleged onset date and continued during the time she was working, but she did not report any work difficulties during that time and later records do not indicate mental health concerns. (R. 76, 517–77, 609–22). Furthermore, although Claimant later reported work-related stress and missing work to her mental health treatment providers due to her impairments, the ALJ found the employer provided records did not demonstrate significant absenteeism or tardiness. (R. 78, 507–09, 684, 689–96). Finally, Claimant argues that her return to work was motivated by financial hardship and submits a statement from her landlord indicating she was behind on her rent and facing eviction. Pl.'s Mot., Ex. B [DE-23-3]. While Claimant's motivation for returning to work may have been financial, that does not change the fact that she was able to successfully work at SGA levels for a significant period of time.

The ALJ concluded that Claimant's work activity at SGA for more than a year at the time of the hearing "supports a finding that the claimant was not experiencing symptomology so severe as to significantly limit her ability to attend to her activities of daily living; maintain concentration, attention, and pace; interact with others, including patients; or manage herself." (R. 78–79). The ALJ properly considered Claimant's work history in assessing her RFC and cited substantial evidence supporting his conclusions. *See* 20 C.F.R. § 404.1529(c)(3) (settings forth numerous factors that an ALJ may consider when evaluating a claimant's symptoms, including a claimant's "prior work record"); S.S.R. 96-8p, 1996 WL 374184, at *5 (July 2, 1996) (evidence of attempts to work must be considered in formulating the RFC); *Court v. Saul*, No. 4:18-CV-201-RJ, 2019 WL 4415145, at *7 (E.D.N.C. Sept. 16, 2019) (finding the ALJ did not err in considering a

7

claimant's work history when formulating the RFC and concluding the claimant's abilities were greater than alleged). Accordingly, the ALJ did not err in considering Claimant's work history.

## B. Opinion Evidence

Claimant argues that her inability to work is demonstrated by the September 29 and October 10, 2022 opinions of her psychiatrist taking her out of work and stating that she would not be improving for the foreseeable future. Pl.'s Mot. [DE-23] at 2–3. Defendant argues that this post-decision evidence would not have changed the ALJ's decision. Def.'s Mem. [DE-25] at 17–18.

When evidence is submitted for the first time to the court, "sentence six of 42 U.S.C. § 405(g) allows for remand only if stringent criteria are met." *Brande v. Kijakazi*, No. 1:21-CV-48, 2022 WL 3646002, at *4 (M.D.N.C. Aug. 24, 2022) (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 100 (1991) ("Congress made it unmistakably clear that it intended to limit the power of district courts to order remands for 'new evidence' in Social Security cases.")), *report and recommendation adopted,* 2022 WL 4386711 (M.D.N.C. Sept. 22, 2022), *dismissed,* No. 22-2197, 2023 WL 3568169 (4th Cir. Jan. 30, 2023). Under sentence six, remand is warranted upon a showing that the "new evidence" is "material" and that there is "good cause for the failure to incorporate such evidence into the record in a prior proceeding [.]" 28 U.S.C. § 405(g); *Barber v. Berryhill*, No. 7:16-CV-361-FL, 2018 WL 1311998, at *4 (E.D.N.C. Feb. 14, 2018), *adopted by* 2018 WL 1129970 (E.D.N.C. Mar. 1, 2018). The Fourth Circuit has explained that a claimant must satisfy four requirements in order to obtain remand based on new evidence not presented to the Commissioner:

> First, the claimant must demonstrate that the new evidence is relevant to the determination of disability at the time the claimant first applied for benefits and is not merely cumulative of evidence already on the record. *Borders v. Heckler,* 777

8

F.2d 954, 955 (4th Cir. 1985) (citing *Mitchell v. Schweiker,* 699 F.2d 185, 188 (4th Cir. 1983)). Second, the claimant must establish that the evidence is material, in that the Commissioner's decision "'might reasonably have been different' had the new evidence been before her." *Id.* (quoting *King v. Califano,* 599 F.2d 597, 599 (4th Cir. 1979)). Third, the claimant must show that good cause exists for her failure to present the evidence earlier. *Id.* And fourth, the claimant must present to the reviewing court "'at least a general showing of the nature' of the new evidence." *Id.* (quoting *King,* 599 F.2d at 599).

*Finney v. Colvin,* 637 F. App'x 711, 715–16 (4th Cir. 2016).

On September 29, 2022, Plaintiff's psychiatrist Dr. Chengappa opined in a state Medical Report for Disability Eligibility Review form that Claimant's disability caused "Temporary Incapacitation," that she was not ready to return to her job due to her inability to interact with mentally ill patients, and that he anticipated she could return to work in six months with unspecified restrictions. Pl.'s Mot., Ex. C [DE-23-4] at 3. On October 10, 2022, Dr. Chengappa completed a state medical eligibility form for short term disability benefits stating that Claimant's disability was attributable to depression and anxiety resulting in decreased concentration and decreased sleep, that she had been unable to work since July 9, 2021, and the expected duration of her disability was one year from the date of the physician's signature. *Id.* at 5.

The evidence from Dr. Chengappa is cumulative of evidence in the administrative record and not material. Claimant submitted to the Appeals Council a page from a prior state disability benefits form completed by Dr. Chengappa on November 10, 2021, stating that Claimant had been unable to work since July 9, 2021 due to PTSD and trauma and that he was unsure of the expected duration of the disability. (R. 8). The September 29 and October 10, 2022 opinions from Dr. Chengappa, submitted to the court in the first instance, are substantially similar to Dr. Chengappa's prior opinion submitted to the Appeals Council. Thus, this evidence is cumulative of evidence

9

already in the record and is not "new evidence" that would justify a sentence six remand.[2] Furthermore, these documents post-dated the ALJ's decision by a year and the Appeals Council's decision by more than six months. "Evidence may relate back to the period on or before the ALJ's decision even if it postdates the decision." *Green v. Kijakazi*, No. 5:21-CV-1-RJ, 2022 WL 866404, at *6 (E.D.N.C. Mar. 23, 2022) (quoting *Shuman v. Berryhill*, No. 3:16-CV-62, 2017 WL 3476972, at *3 (N.D.W. Va. Aug. 14, 2017)). However, here, the post-decision evidence is not material. The ALJ, consistent with Dr. Chengappa, concluded that Claimant could not return to her past work, but the ALJ went on to consider whether there was other work Claimant could perform. The ALJ found that Claimant could perform less demanding work with non-exertional restrictions limiting her contact with others in a low stress environment. Thus, the court cannot find that Dr. Chengappa's subsequent opinion that Claimant could not return to her past work as a CNA because she was not ready to interact with mentally ill clients might reasonably change the result of the ALJ's decision. Accordingly, the opinions are not material and do not justify a sentence six remand.

## C. The RFC Assessment

Claimant generally contends that she unable to work due to her mental and physical impairments. Pl.'s Mot. [DE-23] at 2. Defendant contends that substantial evidence supports the RFC finding. Def.'s Mem. [DE-25] at 7–14.

"[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-

---

[2] Likewise, Claimant submitted to the court letters dated September 9, 2019 and July 22, 2021 regarding her request for Family Medical Leave benefits and a page from the initial level review of Claimant's DIB claim, Pl.'s Mot., Ex. A [DE-23-1, -23-2], that were also included in the administrative record, (R. 20–21, 36, 190), and thus are not new evidence. Claimant also submitted to the court a letter dated August 27, 2019 related to her request for Family Medical Leave, Pl.'s Mot., Ex. A [DE-23-2] at 4–5, that does not appear to be in the administrative record, but Plaintiff has not shown good cause for the failure to present the evidence earlier.

10

Case 5:22-cv-00146-RJ Document 28 Filed 09/18/23 Page 10 of 12

function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The ALJ must provide "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* (quoting S.S.R. 96-8p). "Only after such a function-by-function analysis may an ALJ express RFC 'in terms of the exertional levels of work.'" *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (quoting *Mascio*, 780 F.3d at 636); *see also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion").

The ALJ considered Claimant's testimony from the administrative hearing, her medical records, and the opinion evidence and concluded that Claimant could not perform her past work but could perform other less demanding jobs. (R. 73–84). With respect to Claimant's left shoulder joint dysfunction, the ALJ noted that her shoulder issues had been present for years while she continued to work as a CNA, physical examinations revealed some tenderness but were generally normal, and imaging was normal. (R. 75–76, 517–19, 538–45, 559, 609–22, 644–47, 649, 652, 658–60, 678). The ALJ imposed a reaching limitation in the RFC to account for Claimant's left shoulder dysfunction. With respect to Claimant's mental impairments, the ALJ acknowledged that Claimant suffered from mental health issues related to the loss of her daughter. (R. 76). Claimant ultimately returned to work and was reported as doing significantly better, but after about six months she indicated the stress from work and caring for her grandchildren made her want to quit work, although she also reported having been miserable from being off her medications for the prior two to three months. (R. 76–78, 690–93). While Claimant reported missing work due to her impairments, documentation from her employer did not support a finding of significant absenteeism or tardiness. (R. 78, 507–09, 684, 689–96). The ALJ also analyzed the opinion

evidence as required by the regulations. (R. 79–81).

The ALJ concluded that Claimant could not perform her past job as a CNA at a mental hospital but could perform work requiring her to follow only simple instructions and to interact only occasionally with others in a low stress setting, which would include no fast-paced work, only simple work-related decisions, and few or no changes in the work-setting. (R. 82). The ALJ applied the correct legal standards and adequately explained his decision, and the court finds the RFC determination is supported by substantial evidence. *See Ladda v. Berryhill*, 749 F. App'x 166, 172 (4th Cir. 2018) (finding no error in the ALJ's RFC determination where the ALJ used evidence from the record to explain his finding that the claimant was capable of light work, explained the weight assigned to statements made by the claimant and the opinion evidence, and provided a thorough discussion allowing the court to conclude the RFC was supported by substantial evidence); *see Briley v. Berryhill*, No. 5:18-CV-43-FL, 2019 WL 1330889, at *3 (E.D.N.C. Mar. 25, 2019) (finding no error in the ALJ's RFC determination where the ALJ fully discussed substantial evidence in the record showing symptoms and examination findings supported a lesser functional limitation than the claimant suggested). Accordingly, the court finds no error in the ALJ's RFC analysis.

## VI. CONCLUSION

For the reasons stated above, Claimant's Motion for Judgment on the Pleadings [DE-23] is DENIED, Defendant's Motion for Judgment on the Pleadings [DE-24] is ALLOWED, and the final decision of the Acting Commissioner is AFFIRMED.

SO ORDERED, this the 18 day of September 2023.

Robert B. Jones, Jr.
United States Magistrate Judge